UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>MICHAEL LEE, )<br>)<br>Defendant. ) | Docket No. 18-CR-10105-IT |

GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Michael Lee pled guilty to the above-docketed indictment, which charges him with one count each of sexual exploitation of children, in violation of 18 U.S.C. § 2251, and distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. § 2252A. For the reasons discussed in greater detail below and to be articulated at the hearing on this matter, the government respectfully requests that this Court impose a low-end Guideline sentence, which includes a term of incarceration of 324 months.

**FACTS**

The government relies on and incorporates the facts as set forth in the statement of offense conduct in paragraphs 7 through 19 of the Presentence Investigation Report ("PSR"). In summary, the defendant used Kik, a messaging application, to meet and communicate with other individuals who were interested in the same thing he was: the sexual abuse and exploitation of children. He traded (i.e., received and distributed) child pornography images and videos with these other offenders – one of whom had access to a child with absolutely no ability to protect herself from the abuse she was suffering. Soon after meeting the adult male who had access to that child—his own daughter, Minor A, an eight-year-old low-functioning, nonverbal autistic girl—the defendant began instructing the adult male what to record himself doing with her. The defendant's sexual

exploitation of Minor A progressed from facilitating her sexual abuse through online communication with her father to actively planning an opportunity to meet up with the man so that they could sexually abuse Minor A together – a plan that was thwarted, seemingly, only by inclement weather. This manipulative, predatory, depraved behavior remained hidden and undetected until the fortuitous intervention by law enforcement, when the defendant reached out to an undercover agent on Kik and invited him to join in the sexual abuse of Minor A.

## DISCUSSION

### I. Sentencing Guideline Calculation

Based on its computation of the defendant's total offense level as 41 and his criminal history category as I, the United States Probation Office ("Probation") has computed a Guideline sentence in this case to include a term of incarceration from 324 months to 405 months; the Guideline range of supervised release is five years to life.

The government agrees with Probation's calculation of the defendant's Offense Level and Criminal History Category, including its treatment of the defendant's objections to said calculation, and thus agrees with its determination of his Guideline sentencing range (GSR) as outlined above.

### II. Application of the Section 3553(a) Factors

The low end of the GSR as calculated here—324 months—does represent, indeed, a severe punishment. However, it is one that reasonably fits the crimes to which the defendant has pled guilty.

The government recognizes that it is difficult to quantify exactly how many years would satisfy the Court's obligation to impose a sentence that is just, that would adequately deter both this defendant and others who might commit the same type of crime, and that would protect the

most vulnerable members of our society. Ultimately, this Court can be confident that a Guidelines sentence will achieve all of these goals of sentencing.

A truly significant sentence is necessary to reflect the gravity of the defendant's crimes. As the Sentencing Commission found in its 2012 report to Congress,[1] "all child pornography offenses are extremely serious because they both perpetuate harm to victims and normalize and validate the sexual exploitation of children." [Id. at 311]. This truth is borne out quite clearly in this case, where the defendant was exchanging child pornography on multiple platforms for *at least* months, until he found himself faced with the opportunity to interface directly with a child. Insofar as the defendant's assertion that he was engaging in fantasy relates to his distribution, receipt, and possession of child pornography depicting children not known to him, it completely undermines any claim that he has any insight into or appreciation for the harm that his active participation in a network that feeds off of—depends on—the sexual abuse and exploitation of children (in his case, as young as infants) caused to those children. Insofar as his claim of "fantasy" relates to his sexual exploitation of Minor A, it not only belies a recognition of the utter trauma he caused her, but it is frankly contradicted by the evidence. He made plans with Minor A's father to meet up so that they could sexually abuse Minor A together, he voiced (in Kik chats recovered by law enforcement) excitement and anticipation a few days in advance, and he told the undercover agent that their plans were waylaid by snow (which meant that Minor A's mother would not be

---

[1] Available at https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Chapter_12.pdf.

out of the house as previously planned) – a fact that Minor A's father confirmed in an interview with agents who arrested him.

The defendant's capitalization on Minor A's vulnerability is clear: he knew that her father got away with sexually abusing her because of her diagnosis and took advantage of it for his own sexual gratification. What's worse, he used images he got from Minor A's father as currency to foster online relationships with other like-minded offenders, trading them casually and bragging about the fact that he would tell Minor A's father to "do things" to her. The seriousness of these offenses absolutely cannot be overstated.

In urging this Court to impose the lowest sentence allowable by law, the defendant points to an allegedly low risk of recidivism and to evidence of his good character as witnessed by his family members. The defendant's perceived "normalcy" is what, ironically, makes him so dangerous. Prior to his arrest in this case, he had no criminal record. He owned a home. He held a steady job for decades. He had close relationships with family. This non-threatening public and private persona is precisely what makes the truth of his depraved behavior so jarring and contributes to his dangerousness; no one knew that he was producing and disseminating child pornography from his home, right under his family's noses, and there is no reason to believe that anything but a lengthy term in prison will deter him from committing similar offenses in the future.

Similarly, the fact that the defendant comes before this Court with no prior record is not a mitigating factor in the context of these offenses. The defendant's record was taken into consideration in the calculation of his criminal history category. See, e.g., United States v. Oberg, 877 F.3d 261 (7th Cir. 2017) (30 year sentence for conviction of § 2251 offenses involving one victim reasonable; district judge properly noted that defendants in child pornography cases often have limited criminal histories).

The defendant is advocating for an approximately 44% downward departure/variance from the low end of the GSR, citing essentially to the § 3553(a) factors that this Court must consider (the nature and circumstances of the offense, the history and characteristics of the defendant, and the potential of the sentence to provide deterrence and prevent recidivism). For the reasons above and those that follow, along with argument to be made at the sentencing hearing, the government urges this Court to reject that request and impose a Guideline sentence.

The defendant's argument that application of the Guidelines in this case would be incompatible with a proper consideration of § 3553(a) factors fails to justify a downward departure or variance in this case. Citation to the criticism of "the child pornography guidelines" may be appropriately considered by the Court if this were a straight § 2G2.2 case – but it can gain no traction here, where the defendant's GSR is driven by calculations made under a *different* guideline. See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012) (available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_ and_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm) ["Commission Report"] at 247 n. 2 ("The Commission's 2010 survey of federal district judges revealed that the vast majority of judges surveyed stated that the guideline and statutory penalty ranges in production cases were appropriate as a general matter.")

The defendant's argument that the inevitable collateral consequences that have already started to flow from his conviction would somehow compensate for reducing his incarcerative sentence by nearly half of what the Guidelines call for is similarly unavailing. This is a case where, in addition to openly trading images of the sexual abuse of at least dozens of children, the defendant actively targeted an eight-year-old autistic child for his own prurient interest and gratification – and because *he could*. That his wife and daughter would disown him upon learning

of such despicable behavior should have been foreseeable.  So, too, should the possibility that he would be incarcerated for a very, very long time.

Ultimately, there are no truly mitigating factors significant enough to merit the weight that the defendant urges this Court to assign them.[2]  This defendant, through the crimes documented in this case, has demonstrated himself to be a manipulative, deceitful, serial offender with no demonstrated ability or attempts to cease, control, or even understand the effects of his behavior beyond the negative fallout for him and his family.  In short, the defendant is not a person who merits the minimum possible punishment, even when that minimum is in itself an objectively significant period of time.

While the guideline sentence here is relatively high, it is entirely reasonable given the breadth of the defendant's victimization of innocent and truly helpless children.  A Guideline sentence is not only reasonable, but necessary in this case to promote respect for the law, to adequately punish the defendant for his criminal conduct, to deter him and others from offending in the same ways again, and for long-term protection of the public.

---

[2] Rather than include information that would necessitate the sealing of this filing, the government will address issues surrounding the defendant's personal history in its oral argument at the sentencing hearing.

## CONCLUSION

For all of the foregoing reasons, the government respectfully recommends that this Court impose a sentence of 324 months in prison, a period of 5 years of supervised release, and impose restitution as requested in documents that will be filed under seal with the Court's leave. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense and the goals of sentencing.

Respectfully Submitted,

ANDREW E. LELLING
United States Attorney

Date: October 31, 2019      By:      /s/ Anne Paruti_____
Anne Paruti
Assistant United States Attorney
United States Attorney's Office
One Courthouse Way
Boston, MA 02210
617-748-3310

## CERTIFICATE OF SERVICE

I, Anne Paruti, hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participant as identified on the Notice of Electronic filing:

Date: October 31, 2019                          /s/ Anne Paruti_____
Anne Paruti
Assistant United States Attorney